```
1            IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF ARKANSAS
2                      WESTERN DIVISION

3   UNITED STATES OF AMERICA,

4                  Plaintiff,

5     v.                                   No. 4:08CR424 BSM

6   ANTWANE NELSON,                        August 4, 2010
                                           Little Rock, Arkansas
7                  Defendant.              9:11 a.m.

8

9           TRANSCRIPT OF SENTENCING PROCEEDINGS
           BEFORE THE HONORABLE BRIAN S. MILLER,
10              UNITED STATES DISTRICT JUDGE

11


12  APPEARANCES:

13  On Behalf of the Government:

14      MS. LINDA LIPE, Assistant U.S. Attorney
        MR. EDWARD WALKER, Assistant U.S. Attorney
15         United States Attorney's Office
           425 West Capitol Avenue, Suite 500
16         Post Office Box 1229
           Little Rock, Arkansas  72203-1229
17
    On Behalf of the Defendant:
18
        MR. CHARLES DANIEL HANCOCK, Attorney at Law
19         Hancock, Lane & Barrett, PLLC
           620 East Sixth Street
20         Little Rock, Arkansas  72202

21

22

23      Proceedings reported by machine stenography and displayed

24  in realtime; transcript prepared utilizing computer-aided

25  transcription.
```

Cheryl Bartnett Nelson, RPR, CRR, CCR
United States Court Reporter

P R O C E E D I N G S

THE COURT: First hearing we have on the docket for this morning is the sentencing in the case of the United States of America v Antwane Nelson. The case is 08CR424. And we have Dan Hancock, who is here with Mr. Nelson, and we have Ms. Linda Lipe, who is standing in for Ed Walker for the United States.

Mr. Hancock, please bring Mr. Nelson forward.

MR. HANCOCK: Yes, sir.

THE COURT: Mr. Nelson, I note for the record that you were here on April 23rd, 2010 -- and you were here, Mr. Hancock -- and on that day you pled guilty to two counts, Counts 1 and Count 8, of a superseding indictment dated May 6th, 2009. Those charged you with conspiracy to possess with intent to distribute and distribute cocaine base and possession of contraband in prison.

Now, have you been satisfied with the legal representation you have received from Mr. Hancock?

THE DEFENDANT: Yes, sir.

THE COURT: Anything you want to bring to my attention before we go forward?

THE DEFENDANT: No, sir.

THE COURT: Now, Mr. Nelson, I think when you were here last time, I told you that probation would come out and do a presentence investigation, would send a copy of the report that it prepares to Mr. Hancock. And I always tell people to make

1  sure that they go over the presentence report with the lawyers
2  so that we can make sure that the facts in it are accurate.
3       Mr. Hancock, I know that you filed -- it was a couple of
4  objections to the report.  Do you want to take those issues up
5  now?
6          MR. HANCOCK:  Judge --
7          THE COURT:  Are there issues you believe we need to
8  take up now?  And let me make sure Mr. Nelson knows what's going
9  on.
10      Your lawyer filed objections to your Social Security
11 number, and he asserts that two of the offenses should be
12 grouped.  Those would normally go towards sentencing, but as
13 Mr. Hancock probably knows -- or I am sure knows -- you have
14 more than two prior drug offenses, which means you are a career
15 offender which means that the grouping will not affect your
16 sentence.  Now, we can discuss how we group -- I understand the
17 point being that there is one victim, society.  Probation's
18 point is that although there is one victim, there is two
19 distinct incidences.
20      We can take those up and have a hearing on that or we can
21 proceed.  Ultimately, that won't help him in the sentencing.
22         MR. HANCOCK:  I understand that, Judge, and I think
23 we'll stand on the record with just the added -- it's the
24 same -- my position is it's the same transaction.  If the
25 marshals wouldn't have arrested him, he wouldn't have appeared

1  in custody with drugs and this whole case is about drugs.  And
2  with that, we will just stand.
3          THE COURT:  Okay.  That objection is noted for the
4  record, Mr. Hancock.
5      Ms. Lipe, how do you -- I know you are standing in for
6  Mr. Walker, but I don't think the government had any objections
7  to the presentence report.
8          MS. LIPE:  No, Your Honor.  I am advised we do not.
9          THE COURT:  So I am going to adopt the facts contained
10 in the presentence report as true.
11     Mr. Nelson, I think when you were here last time I told you
12 in federal court we have our statute, which tells me -- and
13 that's the law.  It tells me what the minimum and the maximum
14 sentence I can give you, but then we have sentencing guidelines
15 that help me determine what an appropriate sentence is for you.
16 So even though your maximum might be higher, the guideline might
17 say that an appropriate sentence would be somewhat less than
18 that.
19     Now, you understand that I am not bound to give you a
20 sentence that's within the guidelines, but I have to tell you
21 about all that.  Let me say this.  From the information I have
22 in front of me, the statutory maximums in your case are as
23 follows.  For Count 1, not less than ten years nor more than
24 life in prison, which means I can give you a sentence up to life
25 in prison; not less than five years of supervised release; a

maximum fine of $4 million; and a $100 special assessment.  For Count 8, not more than five years in prison; not more than three years of supervised release; a maximum fine of $250,000; and a $100 special assessment.  And I can sentence you up to the statutory maximums.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Let the record reflect that Mr. Walker is here, and I am sure that Ms. Lipe doesn't mind being relieved.

Mr. Walker, I will tell you Ms. Lipe stood in well for you while you were gone.

MR. WALKER:  Thank you, Your Honor.  I apologize.  For some reason I had this at 9:30.

THE COURT:  No problem at all.

All right.  Now, that's your statutory maximum.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, the guidelines are as follows.  I can get in to Count 1, base offense level being 30, Count 8 being 6.  Because the way the unit system works, you have one unit.

But I am going to bypass that, Mr. Hancock, if you have no objection.

MR. HANCOCK:  No objection.  He understands where we are at with the career criminal.

THE COURT:  Okay.  You were convicted of possessing and attempting to distribute and distributing cocaine base.  Now, at

1  the time of the offense, you were 29 years old and, as
2  referenced in the presentence report, you have five prior felony
3  convictions for controlled substance offenses.  That qualifies
4  you as a career offender, Mr. Nelson.  Because the statutory
5  maximum is life, your offense level is 37, and you will receive
6  a 2-level reduction for acceptance of responsibility, which
7  brings you to 35.
8       Now, Mr. Walker, is the government going to move for the
9  third point?
10      MR. WALKER:  Yes, Your Honor.
11      THE COURT:  So that brings you to a 34.  I note in the
12 presentence report that you have 28 criminal history points,
13 which gives you a criminal history category of VI.  Now, a
14 person having a total offense level of 34 with a criminal
15 history category of VI, it would -- your guideline range is from
16 262 months in prison to 327 months.  Probation is not
17 authorized.  It requires a term of supervised release of five
18 years -- at least five years.  The guideline range for fine is
19 $20,000 to $4 million with a special assessment of $100.
20      Mr. Hancock, are you trying to get my attention?
21      MR. HANCOCK:  No, sir.
22      THE COURT:  Okay.  Just making sure.
23      So, well, if the government moves for the third point, the
24 range for a fine is 17,500 to $4 million and $100 special
25 assessment.  Do you understand that, Mr. Nelson?

1      THE DEFENDANT:  Yes, sir.

2      THE COURT:  And, Mr. Hancock, do you want to make a
3 statement with regard to mitigation?

4      MR. HANCOCK:  Judge, I just have one brief witness, and
5 we will make a statement after that, if I may.  She won't take
6 two or three minutes, Judge.

7      THE COURT:  I will tell you, Mr. Hancock, and I will --
8 I sent out a letter not long ago saying I would no longer take
9 witnesses at my hearings unless they are -- if they are
10 character witnesses and to speak up for the person, I will take
11 letters.  I will only take witnesses if it -- if we have to
12 prove something for purposes of the guidelines.  I hate to put
13 you in that situation, but I had a situation here recently
14 where --

15      MR. HANCOCK:  Judge, I received the letter, and I
16 understand that.  What I will -- then what I will do, if the
17 Court will not allow that, is just I wanted to let the Court
18 know that the folks on this side of the gallery over here are
19 relatives and kids of Mr. Nelson.  They are here in his support,
20 and I was going to call his mother.

21      THE COURT:  Would you identify who they are?

22      MR. HANCOCK:  That's what I was going to have
23 Ms. Benton do.

24   Ms. Benton, stand up.

25      THE COURT:  Ms. Benton, you can come down.  I am not

1  going to put you on the stand and let you testify.  You can make
2  a very brief statement, and you can tell us who all is in the
3  courtroom and how they're related to your son.
4          MR. HANCOCK:  Who all is here?
5          MS. BENTON:  I got his auntie -- I got three aunties, a
6  niece, and his son.
7          THE COURT:  Okay.
8          MR. HANCOCK:  They all here in support of Antwane?
9          MS. BENTON:  Yes, sir.
10         MR. HANCOCK:  So he does have family and folks in the
11 community that support him, and his kids are here too?
12         MS. BENTON:  Yes, sir.
13         THE COURT:  And you wanted to make a brief statement?
14         MS. BENTON:  I just hope that you don't let him be away
15 from me for long.
16         THE COURT:  I understand.
17         MR. HANCOCK:  Thank you.
18      Thank you, Judge.
19         THE COURT:  Okay.
20         MR. HANCOCK:  Judge, I will have a brief statement, and
21 then I think Mr. Nelson would also like to address the Court.
22 Judge, Mr. Nelson is now 31 years old.  He is, as you know from
23 the presentence report, has been essentially involved with drugs
24 pretty much his whole life, whether he has been using or selling
25 drugs.  In getting to know Mr. Nelson over this last year and a

1  half, it doesn't seem to me that it fits his character.  He is a
2  very articulate young man.  He has had some college education.
3  He has a very nice disposition.
4      Now, I would point out to the Court that, although he has
5  had all these prior drug convictions and run-ins with the law,
6  none of these prior convictions or run-ins have been of a
7  violent nature.  I think that's an important point that the
8  Court should consider when crafting a fair sentence for
9  Mr. Nelson.
10     The other things that, Judge, I would like to point out is
11 the codefendant, Mr. Eagle, in this case received a term of
12 probation for his part in the case.  I know he is certainly in a
13 different position than Mr. Nelson.  I don't believe he had any
14 prior criminal history of any significance.
15     One other thing that I think is important that doesn't
16 necessarily affect the guideline range in this case -- and I
17 know the Court is aware of the crack cocaine/powder cocaine
18 disparity.  And I think that the Fair Sentencing Act of 2010 has
19 just been enacted into law in the last couple of days from --
20 reducing it from 100 and 1 ratio to 18 and 1 ratio.  And
21 although I know that Mr. Nelson has been deemed a career
22 criminal, I think it's something the Court should or could
23 consider based on the policy of that -- what is now a law.
24     Judge, what we're essentially asking you to do --
25 Mr. Nelson understands that he is going to do some time and

1  probably some significant time, but we're asking you to temper
2  that, the punishment with some mercy and justice and give him a
3  fair sentence.  And based on the circumstances, we're asking for
4  a sentence at the low end of what is now the 262 to 327 range.
5          Mr. Nelson, you wanted to address the Court?
6          THE DEFENDANT:  Yes, sir.
7          First of all, I wanted to apologize to my family and
8  friends for putting them in this situation.  So to my mom and my
9  kids, I want to say I am sorry.  And my mom, I know you taught
10 me how to discern right from wrong, but I led myself astray.
11 All I can do is pray that God will strengthen me in the face of
12 these obstacles and defeat them daily.  Yes, I did wrong, and I
13 own up to my mistakes.  My family has been supportive of me 100
14 percent since the nightmare began, and I apologize again to them
15 for being sentenced also to however long my misery is and my
16 sentence is.
17         As a father of a four-year-old and a one-year-old, it pains
18 me much more than you can imagine that I have to be away for
19 ever long of their life that you deem necessary.  And I can make
20 this promise to you and the Courts that I, Antwane Nelson, will
21 make the correct message that I won't have to suffer this kind
22 of tragic period in my life again.  I know that I will be the
23 father to my kids that I should have been when I was out
24 foolishly doing wrong.  I can't change what I did, but I can
25 change my future and get off this path of destructive behavior.

1  Before you pronounce sentence, let me apologize to the
2  Court, the community, and society, and all those who were
3  affected by my stupidity.  The shortcuts I tried to take to
4  build my happiness caused me to be at this point today.  I will
5  right my life no matter what, and even though I ask for your
6  leniency in my sentence, I can only be understanding if it
7  doesn't come because no one put me in this position but me.  And
8  with that being said, I thank you for hearing me out.
9  　　　　　THE COURT:  Mr. Hancock, I looked at the Fair
10  Sentencing Act information, note that it does not apply
11  retroactively.  That was one of the things I looked at before I
12  came out.  Also, I note that I believe if he were sentenced
13  under that act, he would -- instead of having a range of 262 to
14  327, I believe his range would be 210-262.  It makes a
15  difference, and that's a fairly large difference, a difference
16  of three or four years.
17  　　　　Mr. Nelson, I am going to -- I do this with people when I
18  have somebody that has an extensive history.  I am not picking
19  on you.  I do this because sometimes hearing our past in public,
20  in open let's us realize how much trouble we have been in our
21  whole life.  You started out in the system -- and I am not
22  talking about in the juvenile system because I don't know if you
23  have a juvenile record.
24  　　　　You started out at the age of 18, May of 1998, with a
25  possession of cocaine and possession of marijuana conviction in

1  Pulaski County.  That was in May of '98.  In July of '98,
2  possession of cocaine with intent to deliver in Pulaski County.
3  In October of '98, at the age of 19, simultaneous possession of
4  drugs and firearms, possession of cocaine with intent to deliver
5  and -- in Little Rock.  And, again, in March of 1999, possession
6  of cocaine with intent to deliver in Pulaski County.  In
7  April of 1999, a possession of cocaine with intent to deliver in
8  Pulaski County.  May of '99, driving while intoxicated; that's a
9  misdemeanor.  June of '99, possession of a controlled substance
10 with intent to deliver, possession of marijuana.  That's in June
11 of '99.  In December of '99, possession of cocaine with intent
12 to deliver.
13        May of 2005, so you have a six-year period.  You got a
14 120-months prison term, and apparently you got out before 10
15 years because 6 years later you were convicted again in May of
16 2005 of driving while intoxicated, misdemeanor.  Three years
17 later in 2008, September of 2008, possession of a firearm by
18 certain persons in Pulaski County in this case.  Your history is
19 very extensive.
20        Now, question for you.  And you made a statement and I know
21 you mean it and you had a chance to reflect and write it.  If
22 you were sitting in my seat and you didn't know you and you were
23 telling -- or somebody was telling you that I am going to get my
24 life together and I have made mistakes and I have done wrong and
25 I am going to change my life, why would they believe you?  What

1  could you tell me that would make me believe that you really
2  right now want to do different than what you have done?
3          THE DEFENDANT:  Well, sincerely, Your Honor, I see --
4  really, being in this situation now, I done caused a lot of
5  people hurt because when I did go to prison and I made promises
6  and then I got out, I tried my best -- you know, well, really
7  not my best.  I really did just enough to please, but then
8  again, I got sidetracked.  I got to doing what I normally was
9  doing, selling drugs and whatever, and see what I am saying that
10 this situation, my people and my family, they constantly,
11 constantly tried to tell me I need not go that road.  But I
12 constantly did it, and through all of this they have been there
13 for me.  And I just want to try to do this for them.  You know,
14 I do owe them a chance to show them that I can do right because
15 through all of this they have been there for me regardless of
16 what I have done.
17         THE COURT:  All right.  Mr. Walker, do you want to make
18 a statement?  Do you have anything to say?
19         MR. WALKER:  Not other than, Your Honor, this
20 gentleman -- I don't believe all of this categorized everything
21 that he has done, but it's certainly a sufficient sentence.  I
22 will say that sometimes I have seen this before where a person
23 has an extensive criminal history -- and I do believe in drug
24 situations sometimes the state system doesn't adequately treat
25 the conduct and, therefore, when we see them, they're looking at

1 a mountain of time after having not really been held accountable
2 for all their actions. And that's unfortunate, but it is what
3 it is.
4 THE COURT: You are preaching to the choir, Mr. Walker.
5 I was a state court prosecutor. As soon as I could prosecute
6 somebody for a drug crime, they would be back out on the street.
7 There were no consequences for their actions. Nobody held
8 anybody responsible, and next thing you're in federal court
9 looking at 30 years.
10 And I am not saying it's not your fault because it is your
11 fault. You are the one who committed these offenses,
12 Mr. Nelson, but had somebody given you some stiff time early on,
13 you might be 30 years old and have the rest of your life ahead
14 of you not to be looking at prison. Now you are looking at
15 being 30 years old facing 30 years in prison. By the time you
16 get out, you are going to be retired. And that's tough -- or
17 20-something years. You will be in your 50s. You will be close
18 to retirement age. You know, the whole -- anyway, I just think
19 the state system needs -- something needs to be done, but that's
20 not for me to do.
21 Now, Mr. Hancock, you wanted to make a statement with
22 regard to 3553(a). I think you have made your statement with
23 regard to mitigation, but if there is anything that makes
24 Mr. Nelson's case different than the other cases that I see, you
25 have a chance to do that now.

1   MR. HANCOCK:  Judge, nothing other than obviously not
2  only does he participate in selling drugs, but he does have a
3  drug problem.  He has had a drug problem since he was a
4  teenager, and we would ask the Court to consider that and maybe
5  recommend a drug treatment facility for him --
6   THE COURT:  Okay.
7   MR. HANCOCK:  -- while he is incarcerated.
8   THE COURT:  Anything else, Mr. Walker, before I move to
9  sentencing?
10   MR. WALKER:  No, thank you, Your Honor.
11   MR. HANCOCK:  Judge, one other thing.  With respect to
12  those criminal history events that you read out, some of those
13  were not convictions.  I understand the Court's point, but some
14  of those were not convictions.  For example, the firearms and
15  the controlled substance was, I believe, nolle pros'd.
16   THE COURT:  Okay.  I read in 1998 you were charged with
17  simultaneous possession of drugs and firearms and cocaine.  The
18  cocaine charge you pled guilty, and the simultaneous possession
19  of firearms was nolle pros'd.
20   MR. HANCOCK:  I got the point, Judge, but I wanted to
21  point that out.
22   THE COURT:  I understand, but let's make sure we have
23  an accurate record.  I think that one was the one that was nolle
24  pros'd, and I don't see another one that was.  So --
25   But anyway, Mr. Nelson, here is what I'm going to do.  Let

me look real quick. The guideline range for prison term is 262 to 327. Hold on just one second. I am going to order you to 262 months in prison on Count 1. I am going to order you to 60 months in prison on Count 8, but they're going to run concurrently. The total number of months is going to be 262. That is the bottom of the guideline range, Mr. Nelson.

I am going to recommend that you participate in residential substance abuse treatment and educational and vocational programs while you are incarcerated.

The statute requires a five-year term of supervised release. So I am going to order that for you when you get out with the following conditions: That you participate in substance abuse treatment, and this will include testing, outpatient counseling, and residential treatment. And I am going to order you to abstain from the use of alcohol throughout the course of treatment. I am going to order you to cooperate in the collection of DNA. I am not going to impose a fine, but I am going to impose a $100 special assessment on both counts, for a total of $200. And that's your sentence.

Now, before I get to appeal rights, is there anything else we need to take up?

MR. HANCOCK: Not from the defense, Judge.

MR. WALKER: No, Your Honor.

THE COURT: Okay. Mr. Nelson, you have a right to appeal this sentence. You have to file your appeal within 14

1   days of today.  If you can't afford the cost of an appeal, you
2   can file for leave to appeal in forma pauperis, which means you
3   fill out a pauper's oath and swear you can't pay it.  An
4   investigation will be done, and if it is determined that you
5   can't afford it, the clerk's office will permit you to either
6   waive the filing fee or allow you to pay it in installments.
7          You also have the right to counsel on appeal, and one will
8   be appointed to represent you if you can't afford it.  What that
9   means is a panel of three judges from St. Louis will review what
10  we did here today to see if I made any mistakes or errors.  If
11  they determine that any mistakes were made, it can be sent back
12  down for me to resentence.  The main thing, though, is you have
13  14 days to appeal.
14         Anything else we need to take up on this case?
15         MR. HANCOCK:  No, Your Honor.
16         THE COURT:  Anything else, Mr. Walker?
17         MR. WALKER:  No, Your Honor.
18         THE COURT:  You may stand down.
19         (Proceedings adjourned at 9:36 a.m.)
20                      C E R T I F I C A T E
21     I, Cheryl Nelson Kellar, Official Court Reporter, do hereby
22  certify that the foregoing is a true and correct transcript of
23  proceedings in the above-entitled case.
24
25  /s/ Cheryl N. Kellar, RPR, CRR, CCR   Date: July 11, 2011
          United States Court Reporter

Cheryl Bartnett Nelson, RPR, CRR, CCR
United States Court Reporter